UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOYZ, INC., a California limited liability company,
ANTELOPE TOYZ, LLC, a California
limited liability company,
WIRELESS, LCC, a California limited
liability company,
DEM ASSOCIATES, INC., a California corporation,
TOYZ RANCHO CORDOVA, LLC, a California
limited liability company; and
ENYART INNOVATIONS, LLC, a California limited
liability company,

      Plaintiffs,

v.

WIRELESS TOYZ, INC., a Delaware corporation,
JSB ENTERPRISES, INC., a Michigan corporation,
WIRLESS TOYZ FRANCHISE, LLC, a Michigan
limited liability company,
JOE BARBAT, an individual,
DAVID D. EBNER, an individual,
NEAL YANOFSKY, an individual,
RICHARD SIMTOB, an individual, and
JACK BARBAT, an individual,

      Defendant.
_____/

Hon. Victoria A. Roberts

Case No. 10-cv-10900

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendants' motion for partial dismissal, (Doc. #26) and Defendants' motion for partial dismissal based on preemption or, alternatively, motion for partial judgment on the pleadings. (Doc. #51).

On September 3, 2010, Plaintiffs filed their First Amended Complaint alleging: Count One – Intentional Fraud; Count Two – Negligent Misrepresentation; Count Three – Violation of

1

the Michigan Franchise Investment Law ("MFIL"); Counts Four and Five – Breach of Written Contract; Counts Six and Seven – Breach of Implied Contract of Good Faith and Fair Dealing; Count Eight – Conversion; Count Nine – Accounting; Count Ten – Violation of § 445.1509 of the MFIL; Count Eleven – Violation of § 445.1532 of the MFIL; Count Twelve – Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.; and Count Thirteen – Violation of the Racketeer Influenced Corrupt Organizations Act, ("RICO").

Defendants filed a motion to dismiss Counts One, Two, Three, Six, Seven, Eight, Ten, Eleven, Twelve, and Thirteen pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also move to dismiss all claims by Antelope Toyz, LLC regarding Stores 303 and 309, particularly Counts One, Two, Three, Five, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen. Plaintiffs say the Complaint is sufficiently pled, but in the alternative, ask for leave to amend. The Court grants Defendants' motion to dismiss Counts Six, Seven, and Eight, but denies the motion with respect to Counts One, Two, Three, Ten, Eleven, Twelve, and Thirteen, and denies Defendants' motion to dismiss all claims by Antelope Toyz regarding Stores 303 and 309.

In Defendants' reply to Plaintiff's response to the motion to dismiss, they request the Court to grant summary judgment sua sponte. The Court denies that request.

The Court also denies Defendants' preemption motion.

## II.     BACKGROUND

Plaintiffs are franchisees of Defendants. Plaintiff Toyz, LCC is a California company with its principal place of business in Roseville, California. Its members are Russ Enyart and Jayna Corporation, which is another California corporation located in Mountain View California. Plaintiff Wireless, LLC is a California company with its principal place of business in Corona, California. Plaintiff Toyz Rancho Cordova, LLC is a California company with its principal place

of business in Rancho Cordova, California.  Plaintiff Enyard Innovations, Inc. is a California company with its principal place of business in Roseville, California.  Plaintiff DEM Associates, Inc. ("DEM") is a dissolved California corporation and is winding up its affairs.  Plaintiff Antelope Toyz, LLC is a California company with its principal place of business in Sacramento, California.  Antelope Toyz executed a franchise agreement with Defendant Wireless Toyz Franchise, LLC ("WTF") on April 12, 2005, which became known as Store 303.  Antelope Toyz executed a second franchise agreement with WTF on April 26, 2005 for Store 309.

Defendants engage in the retail wireless industry.  Defendant Wireless Toyz, Inc. ("WTI") is a Delaware corporation with its principal place of business in Southfield, Michigan; it regularly does business in California.  Defendant JSB Enterprizes Inc. ("JSB") is a Michigan corporation founded in 1995 by Defendant Joe Barbat.  It merged with WTI in December 2007, and WTI became the surviving entity.  Defendant WTF is Michigan company and a subsidiary of WTI with its principal place of business in Southfield, Michigan and regularly does business in California.  Defendants Joe Barbat, Jack Barbat, David D. Ebner and Richard Simtob are all residence of Michigan, and are or have been members or managers of WTF.  Defendant Neal Yanofsky is a resident of Massachusetts, and an officer in both WTI and WTF.

Around 1997, the telecommunications industry changed its focus to wireless phones, and WTI became one of the largest cellular retailers in the Midwest for Ameritech Cellular, and one of the five leading paging suppliers.  In September 2001, WTF began franchising stores to those who wanted to enter the wireless industry and take advantage of Defendants' successful business model.  In July 2003, WTF offered Master Franchise Programs to develop designated territorial markets across the country.  Plaintiffs say they were given false and misleading information to induce them to enter the Wireless Toyz franchise agreements and in the case of Toyz, LLC an

3

area development agreement. Plaintiffs further say that Defendants WTI, WTF, Jack and Joe Barbat, Ebner, and Simtob, failed to disclose material facts which would have impacted their decision to enter into the franchise agreements.

Specifically, Plaintiffs say the Defendants failed to disclose proper financial information with respect to charge backs, hits, Co-Op Advertizing Credits, and commission revenue. "Charge backs" occur when commission is paid to the franchisee for the activation of a customer's account, but the commission gets "charged back" or revoked, if the customer cancels the contract within a few months of activation. Plaintiffs say the true financial impact of charge backs is not disclosed in the Uniform Franchise Offering Circulars ("UFOC"), nor was it disclosed prior to execution of the franchise agreements. Plaintiffs also say that Defendant Jack Barbat admitted that for his stores, there were months when the amount of charge backs exceeded the amount of commissions.

Plaintiffs also say the Defendants failed to disclose the presence of "hits." Hits are discounts on cellular phones that a Wireless Toyz franchisee must give to entice a customer to sign a long-term service contract, rather than do business with a competitor. In other words, in order to get customers, Plaintiffs say it is commonly necessary for the Wireless Toyz franchisee to subsidize all, or part of the sale of the phone out of the franchisee's own pocket.

Plaintiffs claim that Defendants misrepresented the forfeiture of "Co-Op Advertizing Credits," which is money the carrier accrues on behalf of companies like Wireless Toyz, based on the number of activations generated in a given month. The Co-Op money is supposed to be used for pre-approved advertising. Plaintiffs say the franchisees have a limited time to submit the paperwork to get the Co-Op revenue; otherwise, those funds will expire. Plaintiffs argue the Defendants covertly decided they had a right to keep expired funds, and imposed a shorter time

period on which the franchisees could submit paperwork – all to defraud them of the Co-Op revenue. Plaintiffs also claim that Defendants submitted false invoices and dummy ads to obtain expiring funds.

Plaintiffs say the Defendants deliberately misrepresented the amount of commission revenue reported in the UFOC to entice the franchisees to enter into the franchise agreements. Plaintiffs claim the Defendants continue to manipulate these numbers for the purpose of wrongfully diverting revenue to WTF. Plaintiffs argue that "charge backs" and "hits" are devastating to the franchisees, because the franchisees have already taken a $90-100 "hit" in order to get the commission, which often gets revoked, resulting in the franchisee losing both the cell phone, which it had to give away for free or below market value, and the commission revenue, which gets "charged back." Plaintiffs claim the Defendants deliberately failed to disclose this information to fraudulently induce prospective franchisees to sign the franchise agreements.

Plaintiffs plead numerous other examples of misconduct, which interfered with their ability to profitably operate their franchises. (*See Compl.* at ¶ 89, a-n). Further, Plaintiffs claim that WTF restrained competition by deceptively locking its franchisees into buying merchandise only from JSB or one of WTF's other "approved vendors," which charged Plaintiffs up to approximately 50% more than other vendors for the same or similar merchandise. Plaintiffs claim that the majority of Defendants' misconduct was unknown until 2008, when Russ Enyart reviewed WTF's books and records, and a lawsuit filed in Michigan's Oakland County circuit court, *Abbo v. Wireless Toyz Franchise, LLC*, Case No. 2007-082804, revealed more information.

5

This case was originally filed in California's Superior Court of Santa Clara County, but was transferred here.

## III. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion to dismiss, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). Because a motion to dismiss rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller,* 50 F.3d at 377 (citing *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir. 1994)). However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory. *DeLorean,* 991 F.2d at 1240 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). However, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1940.

### IV. APPLICABLE LAW AND ANALYSIS

#### A. Rule 56(a) Summary Judgment

Plaintiffs say the Defendants rely on the Transfer Agreements -- which are outside the pleadings -- to ask the Court to grant summary judgment sua sponte. Plaintiffs say they have not pled claims arising out of, or relating to, the Transfer Agreements, and because the Transfer Agreements were not attached to, nor were they referenced in the Complaint, the Transfer Agreements should not be considered for purposes of a Rule 12(b)(6) motion.

When a district court is presented with material outside the pleadings, under Fed. R. Civ. P. 12(b) it can grant summary judgment sua sponte. However, whether the district court must provide notice of its intentions to convert a motion for dismissal into a motion for summary judgment depends on the facts of each case. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 571 (6th Cir. 2001). Here, the Transfer Agreements were not attached to, nor were they referenced in Plaintiffs' Complaint. Further, very little discovery has been conducted, and Plaintiffs say most of the documents they would need to defend against summary judgment are in the Defendants' possession. Because the Plaintiffs would be surprised if this Court granted summary judgment sua sponte, notice to the Plaintiffs is required, and the Court declines to grant summary judgment sua sponte.

#### B. Defendant's Rule 12(b)(6) Motion

##### 1. Controlling Authority

The parties dispute which choice-of-law provision applies. However, the applicable choice-of-law provision is not fundamental to the Rule 12(b)(6) motions. The Court will address this issue as litigation continues.

### 2. Defendants Argue that the Releases Found in the Consent to Transfer Agreements Bar All Claims Relating to Stores 303 and 309

Defendants argue that the releases found in the Transfer Agreements for Stores 303 and 309, release them from all claims relating to the Franchise Agreement, and the relationship between the parties from the beginning of time through December 19, 2007. Specifically, Defendants say they are released "from any and all obligations under the Franchise Agreements, and any and all other claims, causes of actions, damages, demands, suits, debts, liabilities, and agreements of whatever nature or kind, in law or in equity." (Def.'s Br. at 18) (quoting Exhibit 5 & 6 at Consent to Transfer, ¶ 11).

The releases at issue are in the Transfer Agreements, which were not attached to, nor referenced in, Plaintiffs' Complaint. Therefore, the Court will not consider them per the Sixth Circuit's ruling in *Amini v. Oberlin Coll*, 259 F.3d 439, 502 (6th Cir. 2001) (when presented with a Rule 12(b)(6) motion, the court primarily considers only the allegations in the complaint, although the court may take into account attached exhibits, and documents referenced in the complaint).

### 3. Michigan Franchise Investment Law ("MFIL") (Counts Three, Ten and Eleven)

While Defendants concede the claims against DEM are timely, Defendants argue the balance of the claims in Counts Three, Ten, and Eleven, brought pursuant to the MFIL, are barred by the MFIL's four year statute of limitations found in M.C.L. § 445.1533 ("An action shall not be maintained to enforce a civil or criminal liability created under this act unless brought before the expiration of 4 years after the act or transaction constituting the violation.").

Further, Defendants argue that M.C.L. § 445.1533 is a statute of repose, and begins to run from the date of the "act or transaction" in dispute, and not from the date of discovery, harm, or injury. Defendants further argue that under the statute, there is no tolling provision for M.C.L. §

8

445.1533. Six of the seven agreements at issue were executed more than four years before Plaintiffs filed this action on August 26, 2009. Accordingly, Defendants say they are time barred, and should be dismissed with prejudice. Plaintiffs say the four year statute of limitations was tolled by M.C.L. § 600.5855 because the Defendants fraudulently concealed the existence of the claims.

> M.C.L. § 600.5855 states:
>
> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

M.C.L. § 600.5855.

This tolling provision is in play if a plaintiff alleges: (1) the defendant wrongfully concealed actions; (2) the plaintiff did not discover the operative facts which are the basis of the cause of action within the statute of limitations; and (3) the plaintiff exercised due diligence until discovery of the facts. *State of Michigan v. McDonald Dairy Co.*, 905 F. Supp. 447, 451 (W.D. Mich. 2007). Under M.C.L. § 600.5855, once the plaintiff discovers or should have discovered the existence of the claim, the plaintiff has two years to file suit.

Plaintiffs argue they properly pled the necessary elements to establish fraudulent concealment, and their claims are not time barred because the majority of the Defendants' fraudulent actions were unknown until 2008, when Russ Enyart reviewed WTF's books and records, and when information became available as a result of a lawsuit filed in the Oakland County circuit court, *Abbo v. Wireless Toyz Franchise, LLC*, Case No. 2007-082804. Plaintiffs argue that because of Defendants' fraudulent concealment, the facts giving rise to the claim were not discovered until 2008, and thus Plaintiffs had between 2008 and 2010 to file suit; therefore,

9

the original claim was timely filed on August 26, 2009.  Finally, Plaintiffs say Defendants cite no authority to support their allegations that M.C.L. § 455.1533 is a statute of repose.  The only Michigan case which has cited M.C.L. § 455.1533, has referred to it as a statute of limitations. *Tubby's #14, Ltd. v. Tubby's Sub-Shops, Inc.*, 2006 WL 2796181 (E.D. Mich. 2006).

The Court agrees with Plaintiffs.  Nothing in M.C.L. § 445.1533 suggests that the tolling provisions of M.C.L. § 600.5855 do not apply.  Further, in *McDonald Dairy Co.*, 905 F. Supp. at 453, the court held that under the facts of that case, granting a Rule 12(b)(6) motion based on the statute of limitations, would be premature, and is a question of fact which should be addressed no sooner than on summary judgment.

Construing the complaint in the light most favorable to the Plaintiffs, and accepting all factual allegations as true, Plaintiffs properly plead the necessary elements of fraudulent concealment and the statute of limitations may have been tolled until 2008, when the Defendants say the actions giving rise to the claim became known to them.  It appears Plaintiffs had until 2010 to file suit.

At this juncture, Plaintiffs' MFIL claim appears to have been timely filed on August 26, 2009; this Court denies Defendants' motion to dismiss.

### 4.  Common Law Fraud (Counts One and Two)

Defendants filed their Rule 12(b)(6) motion to dismiss Counts One and Two of Plaintiffs' First Amended Complaint, arguing that Plaintiffs failed to prove common law fraud, and negligent misrepresentation.  After Defendants filed their motion, the Oakland County circuit court issued its opinion in *R & B Communications, Inc. v. Wireless Toyz Franchise, LLC*, Case No. 2010-113623-CK.  The court held that the MFIL preempts common law misrepresentation and omission, rescission, and concert of action claims.  In their motion for preemption or,

10

alternatively, motion for partial judgment on the pleadings, Defendants now argue, pursuant to that ruling, the Court should dismiss Plaintiffs' claims for intentional fraud and negligent misrepresentation pursuant to Rule 12(b)(6) or Fed. R. Civ. P. 12(c). Defendants also say that because *R & B Communications* had not been decided when the original motion to dismiss was filed, this recent request is timely, and not waived as part of Fed. R. Civ. P. 12(g)(2).

For purposes of deciding this issue, the Court finds Defendants have not waived the argument.

> Section 34 (M.C.L. § 445.1534) of the MFIL states:
>
> Except as explicitly provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder. Nothing in this act shall limit a liability which may exist by virtue of any other statute or under common law if this act were not in effect.

M.C.L. § 445.1534.

The decision in *R & B Communications* was based, in part, on the California District Court's opinion in *Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712 (C.D. Cal. 2008). The Oakland County circuit court held that Section 34 of the MFIL "provides that no civil liability shall exist, except as explicitly provided in this act," and the second sentence of Section 34 provides "a savings clause that permits breach of contract claims which are not expressly addressed by the MFIL." The circuit court then held that the MFIL preempts common law claims for misrepresentation and omission.

Whether Defendants waived their preemption argument or not, most of the federal and state cases support the Plaintiffs' argument. *See Walker v. Brooke Corporation*, 2010 WL 125741 (E.D. Mich. 2010); *Franchise Management Unlimited, Inc. v. America's Favorite*

11

*Chicken*, 221 Mich. App. 239, 252 (1997); *Drery v. Marathon Oil Corp.*, 1998 WL 1989877 (Mich. App. 1998).

*R & B Communications* is the only Michigan case which Defendants cite to support their pre-emption argument. Further, in dicta, Judge Feikens said "the MFIL does not limit the availability of causes of action created by other statute or common law." *Hoss*, 2009 WL 2461183, at *3.

Admittedly, *R & B Communications* is directly on point concerning the application of Section 34. However, it is not controlling authority and this Court disagrees with its holding. Section 34 specifically states, "Nothing in this act shall limit a liability which may exist by virtue of any other statute ***or under common law*** if this act were not in effect." MCL § 445.1534 (emphasis added). The plain language of the statute does not limit any other cause of action brought under common law. Therefore, the Court finds that Plaintiffs' common law claims are not preempted under Section 34 of the MFIL.

Plaintiffs say they adequately state a claim for intentional fraud because Defendants knowingly engaged in willful, oppressive, malicious and fraudulent conduct. Further, Plaintiffs say Defendants' argument with respect to negligent misrepresentation lacks merit. They argue that Fed. R. Civ. P. 8 only obligates them to recite "a short plain statement" of their claim showing they are entitled to relief, which Plaintiffs say they have properly done. Further, even if a duty of care must be shown, Plaintiffs argue that this Court can easily determine from Plaintiffs' Complaint that such a duty exists.

Construing the complaint in the light most favorable to the Plaintiffs, and accepting all factual allegations as true, Plaintiffs properly state a claim for relief under Counts One and Two;

12

they adequately plead numerous allegations to sustain recovery for both intentional fraud and negligent misrepresentation, and the Court denies Defendants' motion to dismiss.

**5. Breach of Implied Contract of Good Faith and Fair Dealing (Counts Six and Seven)**

Defendants argue that Plaintiffs' Counts Six and Seven claims for Breach of Implied Contract of Good Faith and Fair Dealing, are restatements of their claims for common law fraud, breach of written contract, and conversion. Defendants say Michigan does not recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing, and Counts Six and Seven of Plaintiffs' First Amended Complaint should be dismissed. (Def.'s Br. at 30-31) (citing *Fodale v. Waste Mgt. of Michigan, Inc.*, 271 Mich. App. 11, 35 (2006); *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476 (2003)).

Plaintiffs concede that Michigan law does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing, separate from the underlying breach of contract claim. However, Plaintiffs argue that while their Count Seven claim may be titled "Breach of the Implied Contract of Good Faith and Fair Dealing," it is more properly characterized as an additional breach of contract claim, based on the Defendants' "bad faith" and "unfair dealing." Plaintiffs say the very "essence" of their claim is the fact that Defendants acted unfairly, and in bad faith regarding "revenues, profitability, charge backs, hits, co-op monies, training, assistance with selection of locations, the inability to get locations approved by carriers, sales, Commission Revenue, Co-op Revenue, and DOA Money." (Pl.'s Op. Br. at 25).

The Court agrees with Defendants; these claimed acts of bad faith and unfair dealing are no different from the claims for breach of written contract alleged in Counts Four and Five. These claims are dismissed.

13

### 6. Conversion (Count Eight)

Defendants say the Plaintiffs cannot maintain a cause of action for conversion, because the UFOC's, Franchise Agreements, and Development Agent Agreement expressly authorize Wireless Toyz to receive commissions and other payments from the wireless carrier, and remit payments to the franchisees. Therefore, Defendants argue that Wireless Toyz lawfully exercised control over commissions and other payments received by the carriers. Further, Defendants say "the economic loss doctrine prevents plaintiffs from pursuing an action in tort where there is no duty separate and distinct from a breach of contract." (Def.'s Br. at 32) (quoting *Steel Strip Wheels, Ltd. v. General Rigging, LLC*, No. 08-13773; 2009 U.S. Dist. LEXIS 90407, at *42 (E.D. Mich. Sept. 30, 2009) (citation omitted)). Defendants further argue that Plaintiffs' conversion claim is not distinct from their breach of written contract claims.

The Court need not reach the applicability of the economic loss doctrine; the conversion claim simply restates what is pled in the breach of written contract claims. The Count is dismissed.

### 7. Unfair Competition (Count Twelve)

Defendants argue that Plaintiffs' Count Twelve claim for unfair competition under Cal. Bus. & Prof. Code §§ 17200 et seq. is insufficient to apprise them of what "unfair competition" they allegedly engaged in, because many of the claims allegedly occurred more than four years before Plaintiffs filed their initial Complaint. They also argue that three conditions must be met under California law to equitably toll the statute of limitations: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend [against] the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." (Def.'s Reply Br. at 8) (quoting *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir.

14

1999)).  The burden is on Plaintiff to plead the facts necessary for equitable tolling.  *Hinton v. Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993).

Defendants argue they will be prejudiced if forced to defend against a claim which they had no notice of until the complaint was served.  Further, Defendants say the allegations that **"*the majority of the defendants' acts*"** were unknown by the Plaintiffs until 2008, is an admission by the Plaintiffs that at least *some* of the acts were known prior to 2008, and thus Plaintiffs failed to act reasonably or in good faith by waiting between 9 and 21 months to file their claim.  Finally, Defendants say the Plaintiffs failed to plead facts which would toll the statute of limitations.  Defendants say this claim should be dismissed, or in the alternative, the Court should order Plaintiffs to re-plead the claim because Plaintiffs failed to properly inform Defendants of the specific conduct which gives rise to the claim.

Plaintiffs say they properly plead unfair competition in paragraphs 146-148 of their First Amended Complaint, and paragraphs 1-174 of the Complaint contain specific factual allegation of unlawful, unfair, and fraudulent conduct which provides support for their claim.  Plaintiffs concede that the delayed discovery rule is inapplicable to Section 17200 claims.  However, Plaintiffs argue that the statute of limitations was tolled until 2008, under the doctrine of fraudulent concealment, when the majority of the misconduct which gave rise to the underlying claim was discovered.  (Pl.'s Op. Br. at 28) (citing *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890, 117 Cal. Rptr. 2d 331, 334 (Cal. Ct. App. 2002)).  Plaintiffs argue the Complaint was timely filed on August 26, 2009, because they had from 2008 until 2012 to bring the claim.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) requires a plaintiff to plead factual allegations sufficient to "raise a right of relief above the speculative level," to survive a

15

motion for dismissal under Rule 12(b)(6). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 573 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs plead their claim for unfair competition in paragraphs 146-148 of their First Amended Complaint, supported with factual inferences in paragraphs 1-174, and sufficiently inform Defendants of the conduct which gave rise to their claim.

Defendants' argument that Plaintiffs cannot meet the doctrine to toll the statute of limitations is without merit. First, Defendants say that because they had no notice of the claim until the Complaint was both filed and served, they are prejudiced by being forced to defend against Plaintiffs' claim. However, one must ask, how notice could have been more timely? Second, even if Plaintiffs knew of some of the Defendants' alleged misconduct prior to 2008, but waited to file suit until after learning of the "majority" of those acts, that does not mean Plaintiffs failed to act reasonably, or lacked good faith. Plaintiffs sufficiently plead the elements of fraudulent concealment, which means they may benefit from equitable tolling. Finally, Defendants' argument that Plaintiffs fail to explain how they were prevented from discovering the information necessary to bring their claim for unfair competition, lacks merit.

Plaintiffs properly plead unfair competition, and they plead sufficient facts to support a claim for fraudulent concealment, necessary to toll the statute of limitations.

**8. Racketeer Influenced Corrupt Organization Act, ("RICO") (Count Thirteen)**

Count Thirteen of Plaintiffs' First Amended Complaint alleges a violation of RICO, 18 U.S.C. § 1962(a). Plaintiffs name Joe and Jack Barbat, Ebner, Yanofsky, and Simtob, all officers and/or directors of WTI or WTF, the conspirators. Plaintiffs also name WTI and WTF.

Defendants say "as a matter of law, conspiracy *cannot* lie among a corporation and its officers and directors under RICO [Section §1962(a)]."  (Def.'s Br. at 34) (citing *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1376 (6th Cir. 1991)).

In response, Plaintiffs for the first time state a claim under RICO, 18 U.S.C. § 1962(c).  A claim under Section 1962(c) requires proof of the existence of two distinct entities – a "person" and an "enterprise."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  A corporate employee can be liable under Section 1962(c) when the corporate employer is the enterprise.  *Id.* at 163.  But, the corporation cannot be both the person and the enterprise.  Defendants say Plaintiffs fail to identify either a person or an enterprise.  If Plaintiffs are allowed to proceed, Defendants ask that Plaintiffs be required to re-plead the factual and statutory basis of the RICO claim with greater particularity.

The Court denies Defendants' motion to dismiss.  The Complaint contains sufficient allegations regarding the material elements of RICO to sustain recovery.  To state a civil claim under Section 1962(a), "a plaintiff must allege an injury to business or property stemming directly from the defendant's alleged use or investment of the racketeering proceeds; an injury caused by the alleged racketeering activities themselves is insufficient."  *Dimov v. EMC Mortgage Corp.*, 2010 WL 2506717 at *4 (E.D. Tenn. 2010) (citing *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990)).  Plaintiffs properly plead an injury to business or property which resulted from Defendants' alleged racketeering activity, in compliance with the pleading requirements of Section 1962(a).

Further, Defendants' argument that corporate officers cannot conspire with the corporation is without merit.  Defendants cite the Sixth Circuit's decision in *Palmer* which states, "Ordinarily, officers and directors of corporations are not deemed at law to be conspirators with

17

the employing entity." *Palmer*, 945 F.2d 1376.  However, the *Palmer* Court only held that a RICO claim against the corporation does not automatically implicate the corporate officers and employees.  *Id.*  If a RICO action alleges wrongdoing by corporate employees, the complaint must state how the individual employees were involved in the RICO violation.  *Id.*  Plaintiffs' Complaint sufficiently implicates the individual officers and directors.

However, there is merit to Defendants' argument that Plaintiffs raise a new claim under 18 U.S.C. § 1962(c), which was absent from Plaintiffs' First Amended Complaint.  Plaintiffs say they properly pled RICO consistent with *Cedric*, because the Complaint describes both the enterprise, and the individual persons.  However, the *Cedric* test requiring the complaint to describe both the enterprise and the individual persons, comes from the standard necessary to establish liability under 18 U.S.C. § 1962(c).  *Cedric*, 533 U.S. at 161; *see also 800537 Ontario Inc. v. Auto Enterprises Inc.*, 2005 WL 3021968, at *3 (E.D. Mich. 2005).

Plaintiffs do not mention 18 U.S.C. § 1962(c) in their First Amended Complaint, only 18 U.S.C. § 1962(a).  It is unknown exactly why Plaintiffs cite the standard for liability under Section 1962(c), when Plaintiffs' claim was originally brought under Section 1962(a).  The Court will require Plaintiffs to re-plead their RICO claim to clear this discrepancy.

## Conclusion

This Court: (1) **DENIES** Defendants' request to grant summary judgment sua sponte pursuant to Rule 56(a); (2) **GRANTS** Defendants' motion to dismiss Counts Six, Seven, and Eight of Plaintiff's First Amended Complaint; (3) **DENIES** Defendants' motion to dismiss Counts One, Two, Three, Ten, Eleven, Twelve, and Thirteen; (4) **DENIES** Defendants' motion to dismiss all claims by Antelope Toyz regarding Stores 303 and 309; (5) **REQUIRES** Plaintiffs to amend their RICO claim consistent with this opinion by July 15, 2011; and (6) **DENIES**

Defendants' motion for partial dismissal based on preemption or, alternatively, motion for partial judgment on the pleadings.

    If not previously exchanged, Initial Disclosures must be exchanged by August 19, 2011.

    **IT IS ORDERED.**

                                                   /s/ Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated: June 30, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 30, 2011

s/Linda Vertriest
Deputy Clerk

---